IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| ANTONIO DEL TORO, | ) | |
|---|---|---|
| Petitioner, | ) | Civil Action No. 12-124 Erie |
| | ) | |
| v. | ) | District Judge Sean J. McLaughlin |
| | ) | Magistrate Judge Susan Paradise Baxter |
| ARCHIE LONGLEY, | ) | |
| Respondent. | ) | |

# MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

## I. RECOMMENDATION

It is respectfully recommended that the petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2241 by Petitioner, federal prisoner Antonio Del Toro, be denied and that this case be closed.

## II. REPORT

Petitioner, who is currently incarcerated at the Federal Correctional Institution ("FCI") McKean, challenges a disciplinary action taken when he was incarcerated at FCI Fort Dix in connection with an incident report issued on July 23, 2010. He was charged with Possession, Manufacture or Introduction of a Hazardous Tool, in violation of Prohibited Act Code 108, and subsequently was found to have committed that violation. A code level 100 misconduct is the most serious form of misconduct.

### A. Relevant Background

On December 13, 2004, the U.S. District Court for the Central District of California sentenced Petitioner for Conspiracy to Import Methamphetamine and for Conspiracy to Possess with the Intent to Distribute and to Distribute Methamphetamine. His projected release date is currently set at November 8, 2025.

1

Petitioner was an inmate at FCI Fort Dix from July 8, 2008, to October 5, 2010. During the relevant time period, Code 108 read that the following was a prohibited act:

> Possession, manufacture, or introduction of a hazardous tool (Tools most likely to be used in an escape or escape attempt or to serve as weapons capable of doing serious bodily harm to others; or those hazardous to institutional security or personal safety; e.g., hack-saw blade)

28 C.F.R. § 541.13, Table 3.[1]

On July 23, 2010, at approximately 7:15 p.m., officers at FCI Fort Dix conducted a random search of Petitioner's cell. The reporting officer stated that when he searched the top shelf of Petitioner's secure locker he found a red Virgin Mobile cell phone and a cell phone charger. Petitioner was charged with <u>Possession, Manufacture or Introduction of a Hazardous Tool</u>, in violation of Code 108. He was notified of the charge that same date and provided a copy of the Incident Report. [ECF No. 9-3 at 2-3].

On July 28, 2010, the Unit Discipline Committee ("UDC") conducted a hearing on the matter. When questioned by the UDC, Petitioner admitted that he had had two cell phones. He stated that he became worried when he knew he would be searched and threw the other cell phone away. Because the UDC recommended sanctions that were not available at the UDC level, the incident was referred to the Disciplinary Hearing Officer ("DHO") for further action. [ECF No. 9-3 at 2].

Petitioner's hearing before the DHO was held on August 18, 2010. He was represented by his requested staff member, was read his rights, and indicated that he understood them. The DHO read the body of the Incident Report to him. He admitted that he had possessed two phones. He told the DHO where he hid the second phone, and disclosed the identity of the inmate from whom he acquired one of the phones. [ECF No. 9-4 at 2].

---

[1] In 2011, the BOP revised Code 108 to provide additional examples of "hazardous tools," including a "portable telephone, pager, or other electronic devise." 28 C.F.R. § 541.3 (effective June 20, 2011).

At the conclusion of the hearing, the DHO determined that Petitioner committed a Code 108 violation. The DHO also explained why a cell phone is considered to be a hazardous tool:

> The action on the part of any inmate to possess, manufacture, or introduce a hazardous tool into any correctional institution threatens the safety and security, not only of the inmate involved, but that of the entire institution. In the recent past, inmates have used hazardous tools to effect escapes, and seriously injure other inmates and staff members. A cell phone falls under the classification of a hazardous tool, as it has been used to arrange rendezvous for escapes, and has been used to arrange contraband introductions, and further allows the inmate to make contact with individuals outside the institution, possibly for illicit or illegal activities, without the knowledge of staff. In accordance with the memorandum dated December 28, 2009, submitted by Donna Zickefoose, Warden, a cell phone is considered a threat to the security and orderly running of the institution, not only of the inmate involved, but that of the entire institution.

[ECF No. 9-4 at 4].

The DHO imposed the following sanctions: disallowance of 40 days of good conduct time, disciplinary segregation for 30 days, forfeiture of 378 days of non-vested good conduct time, loss of commissary privileges for 60 days, loss of Trulinks (email) privileges for 18 months, loss of phone privileges for 18 months, and loss of visitation privileges for 60 days. [ECF No. 9-4 at 3].

Petitioner appealed the DHO's decision through the BOP's administrative review process. On January 12, 2012, the Administrator of National Inmate Appeals denied his appeal, explaining in relevant part:

> As indicated by the Regional Director, the Warden at your institution advised the inmate population with a Memorandum dated December 28, 2009, that any inmate found in possession of electronic devises or related equipment, such as cell phones, chargers, video equipment, etc., may be charged with a violation of Code 108.

[ECF No. 4-1 at 3].

Petitioner commenced this case in October of 2012. He argues that he should not have been charged with violating Code 108 because the BOP did not provide proper notice that a cell phone would be considered a "hazardous tool." He also claims that the BOP violated the Administrative Procedures

3

Act, 5 U.S.C. § 551, *et seq.* ("APA") when it instituted the rule that classified them as such. He argues that, at a minimum, his charge should have been reduced to a less severe Code 305 violation, <u>Possession of Anything Not Authorized</u>, as was done in previous cases involving other inmates. He contends that because it was not, his rights under the Equal Protection Clause were violated.

Respondent has filed an Answer [ECF No. 9], to which Petitioner has filed a Reply [ECF No. 10].

### B. Subject Matter Jurisdiction

28 U.S.C. § 2241 "confers habeas jurisdiction to hear the petition of a federal prisoner who is challenging not the validity but the *execution of his sentence*." <u>McGee v. Martinez</u>, 627 F.3d 933, 935 (3d Cir. 2010) (emphasis added) (quoting <u>Coady v. Vaughn</u>, 251 F.3d 480, 485 (3d Cir. 2001) and citing <u>Woodall v. Fed. Bureau of Prisons</u>, 432 F.3d 235, 241 (3d Cir. 2005)). In <u>McGee</u>, the Third Circuit Court instructed that "the question to be asked is whether granting the petition would 'necessarily imply' a change to the fact, duration, or execution of the petitioner's sentence." 627 F.3d at 936. In another case, it held that "[a] challenge, such as this one, to a disciplinary action that resulted in the loss of good-time credits, is properly brought pursuant to § 2241, as the action could affect the duration of the petitioner's sentence." <u>Queen v. Miner</u>, 530 F.3d 253, 254 (3d Cir. 2008) (per curiam) (citations omitted).

### C. Discussion

#### 1. The BOP's Classification of Cell Phones As Hazardous Tools

Petitioner claims that his due process rights were violated because he was unaware that the BOP considered cell phones to be hazardous tools. This claims is denied because the Warden at FCI Fort Dix advised the inmate population in a Memorandum dated December 28, 2009, that any inmate found in

4

possession of electronic devises or related equipment, such as cell phones and chargers, may be charged with a violation of Code 108. [ECF No. 4-1 at 3; ECF No. 9-4 at 4]. And, in any event, there is no dispute that Petitioner was on notice that Code 108 prohibited the possession of any tool likely to be used in an escape or escape attempt. A cell phone falls within that broad definition.

Petitioner's real complaint is with the BOP's decision to classify cell phones as "hazardous tools," thereby making the possession or attempted possession of them fall within the ambit of the version of Code 108 in effect at the time in question here. Other federal prisoners have made the same challenge to the BOP's decision, and their requests for habeas relief have been rejected repeatedly by the Third Circuit Court because it is well-settled that "[a]n agency's interpretation of its own regulations is 'controlling … unless it is plainly erroneous or inconsistent with the regulation.'" Chong v. Dist. Dir. INS, 264 F.3d 378, 389 (3d Cir. 2001) (quoting Bowles v. Seminole Rock & Sand Co., 325 U.S. 410, 414 (1945)). For example, in Hicks v. Yost, 377 F.App'x 223, 224-25 (3d Cir. 2010) (per curiam), the court held that "the absence of the term 'cell phone' in the text of [the prior version of] Code 108 did not prevent the BOP from interpreting that provision to include this item." The court further held that the BOP's interpretation of Code 108 is not plainly erroneous or inconsistent with that provision and, therefore, cannot be disturbed by a federal court sitting in habeas. Id. (citing Chong, 264 F.3d at 389). See also Ryan v. Scism, 474 F.App'x 49, 52 (3d Cir. 2012) (per curiam) (petitioner "has not shown that [the] BOP's interpretation that the possession of [a] cellular phone is a prohibited act under PAC 108 is plainly erroneous or inconsistent with the regulation."); Materon v. Ebbert, 446 F.App'x 405, 407 (3d Cir. 2011) (per curiam) ("The DHO determined, in accordance with a memorandum issued by the warden, that cell phones were 'hazardous tools' because they could be used to facilitate escape or to engage in other illegal activities, and thus represent 'a threat to the security and orderly running of the institution.' … This interpretation is consistent with the language of Code 108, and we thus discern no

5

error in the DHO's analysis."); McGill v. Martinez, 348 F.App'x 718, 721 (3d Cir. 2009) (same); Robinson v. Warden, 250 F.App'x 462, 464 (3d Cir. 2007) (same).

Petitioner also argues that the BOP's rule to include cell phones as a "hazardous tool" within the prior version of Code 108 is invalid because it was not promulgated in accordance with the APA's notice-and-comment procedures, set forth at 5 U.S.C. § 553. This claim also has no merit.

The APA provides that an agency may not adopt a "rule" (commonly referred to as a "legislative rule" or "substantive rule") without providing prior notice and comment through publication in the Federal Register. 5 U.S.C. § 553(b), (c). It defines a "rule" as "the whole or part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency[.]" Id. § 551(4). Rules that are issued in violation of the APA are invalid.

On the other hand, "interpretive" rules seek only to interpret language already in properly issued regulations. If the agency is not adding or amending language to the regulation, the rules are interpretive. Interpretive, or "procedural," rules do not themselves shift the rights or interests of the parties, although they may change the way in which parties present themselves to the agency. Interpretive or procedural rules and statements of policy are exempted from the notice-and-comment requirement. Chao v. Rothermel, 327 F.3d 223, 227 (3d Cir. 2003) (citations omitted); Dia Navigation Company v. Pomeroy, 34 F.3d 1255, 1264 (3d Cir. 1994).

Under the regulation in effect at the time at issue here, Code 108 included all tools likely to be used in an escape or escape attempt, and a cell phone falls within that definition. Therefore, the inclusion of cell phones as "hazardous tools" under Code 108 was an interpretative rule and not subject to the notice-and-comment requirement of the APA. Ryan, 474 F.App'x at 52 ("The APA applies only to legislative rules, rules that impose new duties upon the regulated party…. PAC 108, however, is an

6

interpretive rule, and therefore the APA does not apply."); Hall v. Zickefoose, 448 F.App'x 184, 186 (3d Cir. 2011) (per curiam) ("The APA does not apply to PAC 108 because PAC 108 is an interpretive rule.").

Based upon all of the foregoing, Petitioner's due process and APA claims have no merit and must be denied.

### 2. The Application of Code 108 To Petitioner Did Not Violate the Equal Protection Clause

The Equal Protection Clause requires that all people similarly situated be treated alike. See, e.g., City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). A petitioner who alleges an equal protection violation has the burden of proving the existence of purposeful discrimination that had a discriminatory effect on him. McCleskey v. Kemp, 481 U.S. 279, 292 (1987); Whitus v. Georgia, 385 U.S. 545, 550 (1967). "Thus, to prevail under the Equal Protection Clause, [Petitioner] must prove that the decisionmakers in his case acted with discriminatory purpose." Id.

Petitioner contends that the BOP violated his equal protection rights because some inmates found to be in possession of a cell phone had their Code 108 violations eventually reduced to the lesser charge of Code 305, Possession of Anything Not Authorized. In support of this claim, he cites to two cases in which the inmate eventually received less severe punishment for the same violation committed by him: Neagle v. Grondolsky, No. 09-2016, 2010 WL 2546021 (D.N.J. June 18, 2010) and Hudson v. Zickefoose, No. 251, 2010 WL 4746220 (D.N.J. Nov. 15, 2010). Petitioner has failed, however, to put forth sufficient evidence to show that these inmates were similarly situated to him or that his disciplinary sanction was the result of purposeful discrimination. Other federal inmates have made the same claim, and the Third Circuit Court has found it to be without merit for the same reasons. Lloyd v. Shartle, No. 12-3883, 2013 WL 540351, *2 (3d Cir. Feb. 14, 2013) ("We also agree with the District Court that

Lloyd's equal protection rights were not violated by the disciplinary proceedings. In order to succeed on such a claim, Lloyd must demonstrate that the decisionmakers in his case acted with a discriminatory purpose. Here, he alleges only that two other inmates previously had their Code 108 violations for possessing a cell phone eventually reduced to lesser charges.") (citing McCleskey, 481 U.S. at 292, and quoting Rhodes v. Robinson, 612 F.2d 766, 775 (3d Cir. 1979) for the proposition that "[b]ecause the punishment handed down in any case of prisoner misconduct is determined on the basis of the facts of the particular case, the equal protection clause cannot require exact uniformity in degrees of punishment.")). See also Ryan, 474 F.App'x at 52-53 ("Although [the petitioner] alleged that inmates Hudson and Neagle received a lesser sanction than he for the same prohibited act, he failed to offer evidence that Hudson and Neagle were similarly situated to him. Moreover, [the petitioner] was sanctioned in conformity with the regulation. Accordingly, his equal protection claim fails."); Hall, 448 F.App'x at 187 (same); Millard v. Hufford, 415 F.App'x 348, 350 (3d Cir. 2011) (per curiam) ("Millard cited various cases in which inmates received less severe punishment for the same violation committed by Millard (possession of a weapon), arguing that because he received harsher punishment than other inmates for the same offense, the punishment must have been the result of discrimination .... Millard's argument falls well short of establishing the purposeful discrimination necessary to make out an equal protection claim.") (citing McCleskey, 481 U.S. at 292)).

      Based upon all of the foregoing, Petitioner's equal protection claim lacks merit and should be denied.

### III. CONCLUSION

For the foregoing reasons, it is respectfully recommended that the petition for a writ of habeas corpus be denied and that this case be closed.[2]

Pursuant to the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Civil Rules, the petitioner must seek review by the district court by filing objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Failure to do so will waive the right to appeal. Brightwell v. Lehman, 637 F.3d 187, 193 n.7 (3d Cir. 2011).

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated: February 21, 2013

cc: The Honorable Sean J. McLaughlin
United States District Judge

---

[2] Section 102 of the Antiterrorism and Effective Death Penalty Act (28 U.S.C. § 2253(as amended)) codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. Federal prisoner appeals from the denial of a § 2241 habeas corpus proceeding are not governed by the certificate of appealability requirement. United States v. Cepero, 224 F.3d 256, 264-65 (3d Cir. 2000); 28 U.S.C. § 2253(c)(1)(B).